IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**RAYMOND ELSWICK**,

            **Petitioner,**

v.                                        **Case No. 2:14-cv-29300**

**MARVIN PLUMLEY, Warden,**

            **Respondent.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the court are Petitioner Raymond Elswick's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 and his Amended Petition, (ECF Nos. 4, 40), and Respondent's Motion to Dismiss and for Judgment on the Pleadings, (ECF No. 48). This case is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

After thorough consideration of the record, the undersigned conclusively **FINDS** that Petitioner is not entitled to the relief requested. Therefore, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** the Petition for a Writ of Habeas Corpus and Amended Petition, (ECF Nos. 4, 40); **GRANT** Respondent's Motion to Dismiss and for Judgment on the Pleadings, (ECF No. 48); and **DISMISS** and **REMOVE** this case from the docket of the court.

## I.    Relevant Facts and Procedural History

Petitioner seeks federal habeas relief concerning his 2008 West Virginia conviction for voluntary manslaughter and conspiracy. He was incarcerated for that conviction when he filed this action, but has since been paroled. (ECF No. 41).

### A. Prior Convictions

In October 1985, Petitioner was convicted in the Circuit Court of Jackson County, West Virginia in Case No. 85-F-44 of the felony crime of burglary. (ECF No. 9-8 at 3). Thereafter, in June 1994, Petitioner was convicted of felony breaking and entering in Case No. 93-F-16 in the Circuit Court of Roane County, West Virginia (hereinafter the "trial court").

### B. Death of Daniel Burns

On May 26, 2005, Petitioner and Daniel Lee Burns ("Burns") were performing home repairs and/or remodeling at the home of Joey and Crystal Hicks, who lived on Market Street in Spencer, West Virginia. *State v. Elswick,* 693 S.E.2d 38, 42 (W. Va. 2010) ("*Elswick I*"). Crystal Hicks's mother, Joan Knicely, and the Hicks's children were also present in the home. (ECF Nos. 9-11 at 10, 48-7 at 10). At some point, Crystal Hicks allegedly discovered 51-year-old Burns placing his hands inside of her nine-year-old daughter's shirt and pants, and she started yelling as she pushed Burns toward the front door. *Elswick I*, 693 S.E.2d at 42; (ECF No. 9-11 at 10).

Upon hearing the commotion, Joey Hicks and Petitioner entered the room, and Joey Hicks struck Burns in the face, which rendered Burns unconscious. (ECF No. 9-11 at 10). Crystal Hicks dumped a bucket of water on Burns to "wake him up and get him out of the house." *Id.* Around this time, Jeffery Matthews ("Matthews"), a neighbor of the Hicks family, heard a child scream as he was watching television, and he went out on his

2

front porch. (ECF Nos. 9-11 at 10; 48-7 at 8). Matthews observed Crystal Hicks, Joey Hicks, and Petitioner on the Hicks's front porch kicking Burns for 15 to 20 minutes. *Id.* Matthews watched Joey Hicks drag Burns into the yard where he kicked him for another two to three minutes during which time Petitioner came out and kicked Burns. Joey Hicks then put Burns into the hatch of Crystal Hicks's green station wagon. (ECF No. 9-11 at 10-11).

Police officers arrived at the Hicks's home after being summoned by concerned neighbors. *Elswick I*, 693 S.E.2d at 42; (ECF No. 9-11 at 11). Crystal and Joey Hicks and Petitioner told the officers that Burns was caught molesting the Hicks's daughter, and they stated that Burns departed the premises. *Id.* When police left to search for Burns, Crystal Hicks drove off in her car with Joey Hicks in the front passenger seat, Petitioner in the back seat, and Burns in the hatch. (*Id.*). Witnesses Roger Simon and William Jeffries ("Simmons" and "Jefferies") observed Crystal and Joey Hicks and Petitioner in the car around that time. (ECF No. 48-7 at 9).

Burns regained consciousness in the car, and Crystal Hicks asked him about his interaction with her daughter. (ECF No. 9-11 at 11). Burns allegedly laughed and put up his middle finger whereupon Petitioner hit him four or five times, and he again lost consciousness. (*Id.*). According to Crystal Hicks's testimony at Petitioner's trial, Burns never responded to any further beatings. (*Id.* at 12). She stated that Joey Hicks told her to drive to a remote area on Route 33 near Lion's Fork where he told her to stop the car. (*Id.* at 11). Joey Hicks and Petitioner took Burns out of the car and beat him further. (*Id.*). They amputated Burns's finger with a knife and cauterized the wound with a lighter. *Elswick I*, 693 S.E.2d at 42; (ECF No. 9-11 at 12). When they placed Burns back in the vehicle, supposedly to take him to his residence, they discovered that he was dead. *Id.* at

42-43; (ECF No. 9-11 at 12). Crystal Hicks drove "down the road" and Joey Hicks and Petitioner placed Burns's body in a creek. *Elswick I,* 693 S.E.2d at 43; (ECF No. 9-11 at 12). An autopsy later revealed that Burns died of blunt force trauma. *Elswick I,* 693 S.E.2d at 43; (ECF No. 9-11 at 13). Crystal and Joey Hicks showed authorities where to find Burns's body. (ECF Nos. 9-11 at 12; 48-7 at 12).

### C. Arrest and Indictment

On May 28, 2005, Petitioner was arrested and incarcerated in relation to Burns's death. (ECF No. 5 at 3). On September 27, 2005, he was indicted in the trial court for murder, felony murder, kidnaping, and conspiracy. *Elswick I,* 693 S.E.2d at 43.

### D. Accomplices' Pleas

Crystal and Joey Hicks were also charged with the death of Daniel Burns, and they entered into plea agreements with the State. Crystal Hicks pled guilty to voluntary manslaughter and conspiracy to commit a felony of voluntary manslaughter. *Id.* at 46 n.4. Joey Hicks pled guilty to involuntary manslaughter, conspiracy to commit a felony of malicious wounding, and conspiracy to commit a felony of kidnaping. *Id.*

### E. Trial Continuances

Petitioner received "many plea offers" from the State, but he maintained his innocence and elected to proceed to trial. (ECF No. 9-21 at 11). In his first trial, Petitioner was represented by attorneys Lee F. Benford ("Benford") and Kevin B. Postalwait. (ECF Nos. 48-7 at 1; 48-8 at 1).  His trial was delayed due to the following continuances:

1. On October 21, 2005, the State moved to continue the trial due to DNA testing delays;

2. On October 24, 2005, Petitioner moved to continue the trial to permit time for competency testing.

3. On March 24, 2006, the State moved to continue the trial due to the fact

that scientific testing results had not been received.

4. On May 24 or 25, 2006, in response to the State's disclosure of DNA evidence, scientific evidence, and footprint analysis, Petitioner moved to continue the trial to allow for independent expert testing.[1]

5. On September 26 and October 2, 2006, the State disclosed several new items of evidence, including a blood identification report, DNA report, a footwear comparison report, and other evidence from the State Police Lab. Petitioner requested a continuance because the photographs provided were of poor quality.

6. On the morning of scheduled trial on February 20, 2007, the State disclosed a Crime Scene Report dated July 7, 2005, as well as fifty photographs of the crime scene. In response, Petitioner again moved for a continuance based upon the late disclosure by the State.

*Elswick I*, 693 S.E.2d at 43; (ECF Nos. 5 at 4-9; 48-9 at 2-3).

### F. Mistrial

Petitioner's first trial began on April 24, 2007. *Id.* Joey and Crystal Hicks, Matthews, Knicely, Simmons, and Jefferies all testified for the prosecution regarding the events that took place on May 26, 2005. (ECF No. 48-7 at 9-10). In his closing argument on April 27, 2007, the prosecutor, Mark Sergent ("Prosecutor Sergent"), made the following statement:

> Now, in this case, we know from Mr. Matthews what happened on Market Street, eyewitness testimony. We know from Bill Jeffries and Roger Simmons who was in the car; direct, eyewitness testimony. Joan Knicely, direct eyewitness testimony. Burns was here; they accused him of something; he was gone; Joey was gone; Crystal was gone; Raymond was gone. Okay, ladies and gentlemen, as prosecutor, the next direct evidence I have is out here. Who knows what happened from there to there? There were only four people in the car. ***I can't call Mr. Elswick as a witness, he has a right to remain silent*** –

(ECF No. 48-7 at 19-20) (emphasis added).

Petitioner immediately objected and moved for a mistrial based on Prosecutor

---

[1] This testing produced favorable evidence for Petitioner. *Elswick* I, 693 S.E.2d at 43.

Sergent's remark regarding his right to remain silent. (ECF No. 48-8 at 2, 3). Prosecutor Sergent told the trial court that the purpose of his statement was to explain that he entered into plea agreements with Petitioner's accomplices, Crystal and Joey Hicks, because they were the only witnesses who could testify regarding what happened after they left Market Street with Burns in the car. (*Id.* at 13). The trial court concluded that Prosecutor Sergent did not intentionally comment on the fact that Petitioner did not testify, but the remark was nonetheless impermissible. (*Id.* at 16). Therefore, the trial court granted Petitioner's request for a mistrial on April 27, 2007. (*Id.* at 18).

### G. Defense Motions

Petitioner filed several motions in the trial court, which are relevant to the claims presented in his federal habeas petition.

#### 1. Double Jeopardy

Petitioner moved to dismiss the indictment based on double jeopardy after the mistrial. *Elswick I*, 693 S.E.2d at 45. The trial court held a motion hearing on July 20, 2007, during which Prosecutor Sergent again testified that his remark that resulted in the mistrial was an attempt to explain why he called Crystal and Joey Hicks as witnesses. *Id.* Prosecutor Sergent stated that he "did not purposefully make a statement to cause a mistrial," and, as the State had completed its case, he had no reason to "throw" the jury. *Id.* The trial court found that "while the remark did indeed constitute reversible error by the State, there was no evil intent, no motivation to harass or prejudice [Petitioner], and no bad faith." *Id.* Therefore, the trial court "found that double jeopardy would not bar retrial because the prosecutor's statements were not made in an intentional attempt to provoke a mistrial." *Id.* The trial court denied Petitioner's motion to dismiss the indictment. *Id.*

6

### 2. John Richards

Petitioner's second trial was scheduled to begin on June 24, 2007. *Elswick I*, 693 S.E.2d at 43. However, on the day of the trial, Petitioner moved to continue based upon recent discovery of a possible witness named John Richards ("Richards"). *Id.*; (ECF No. 48-11). Richards was Joey Hicks's cellmate in October 2005 when Joey Hicks was arrested for Burns's death. While sharing a cell, Richards wrote letters to his attorney indicating his desire to enter into plea negotiations in his criminal case in Calhoun County, West Virginia in exchange for him providing information concerning the death of Burns in neighboring Roane County, West Virginia. (ECF No. 48-11 at 43). Richards claimed that he had knowledge that Joey Hicks was troubled that his and his wife's stories about the death of Burns would not align. (*Id.* at 81-82). Richards also provided a statement to the Calhoun County prosecutor that Joey Hicks had a knife and a lighter in his possession when he was arrested and jailed. *Elswick I*, 693 S.E.2d at 45 n.2. Petitioner claimed that information from Richards could be used to impeach Joey Hicks, if he testified like he did in Petitioner's first trial regarding the utilization of the knife and lighter in the crime and the circumstances of the beating. *Id.*

The Calhoun County prosecutor forwarded Richards's statement to Prosecutor Sergent in 2005 and also entered into a plea agreement with Richards to reduce his unrelated felony charge in Calhoun County to a misdemeanor in exchange for his testimony in Petitioner's case in Roane County. *Id.* However, that information was not turned over to the defense in Petitioner's case. *Id.* Petitioner's counsel advised the trial court on the day of his scheduled trial on July 24, 2007 that he had learned of Richards's statement from the Calhoun County prosecuting attorney. *Id.*

Petitioner moved to dismiss the indictment on the basis of prosecutorial

misconduct for not disclosing Richards's statement, and the trial court held a hearing on the motion. Prosecutor Sergent testified that he did not recall receiving a faxed copy of Richards's statement or any accompanying letter from the Calhoun County Prosecutor's Office because he had been out of town when the fax arrived at the office and had not received it personally. *Elswick I*, 693 S.E.2d at 46. He further explained that a clerk had been terminated for failing to follow required protocol regarding the handling of faxes received in the prosecutor's office, and he stated that he had reviewed his entire file in this case and had not located the fax in question. *Id*.

The trial court concluded, based upon a preponderance of the evidence, that Prosecutor Sergent did not have actual knowledge of Richards's statement until he was informed of its existence by Petitioner's counsel on July 23, 2007. The trial court further explained that Joey Hicks's testimony was impeached by prior inconsistent statements that he made to law enforcement officers, as well as by testimony from his wife, Crystal Hicks, during Petitioner's initial trial. *Id*. The trial court observed that Joey Hicks's testimony had been "so utterly discredited that the question arose why the prosecutor even bothered calling him as a witness" in the first trial. *Id*. Ultimately, the trial court ruled that the appropriate response to the revelation of Richards's statement was to grant a continuance to allow the defense to investigate Richards and determine whether he should be presented as a witness. *Elswick I*, 693 S.E.2d at 46-47.

### 3. Discovery Sanctions

On July 25, 2007, the State submitted its twenty-fourth supplemental disclosure, including information about the lighter and knife used in the crime and thereafter allegedly in Joey Hicks's possession. *Id*. Trial was continued to allow for DNA testing by both parties' experts. *Elswick I*, 693 S.E.2d at 46-47. On January 9, 2008, Petitioner filed

a motion to compel and also requested sanctions, arguing that numerous items had not been properly forwarded to his expert. *Id.* A Rule to Show Cause was issued against the State Police Lab, but the trial court found that substantial compliance was ultimately demonstrated. *Id.*

### 4. Speedy Trial

Petitioner moved to dismiss the indictment for "ongoing discovery violations" and violation of his right to a speedy trial, but the trial court denied the motions. *Id.* The trial court noted that, although the State argued that the indictment need not be dismissed pursuant to the three-term rule espoused in W. Va. Code § 62-3-21,[2] Petitioner's argument actually rested solely on his constitutional right to a speedy trial as guaranteed to him in the United States and West Virginia Constitutions. (ECF No. 48-9 at 1-2). In fact, Petitioner conceded that he was not entitled to relief under West Virginia's three-term rule, as he requested many of the continuances. (*Id.* at 5).

In terms of his Sixth Amendment constitutional right to a speedy trial, the trial court considered whether Petitioner showed that the following factors established in *Barker v. Wingo* 407 U.S. 514 (1972) weighed in his favor: (1) length of the delay; (2) reason for the delay; (3) whether he asserted his right to a speedy trial; and (4) whether he suffered prejudice from the delay. (ECF No. 48-9 at 6). As to the first factor, the trial court found that the delay in Petitioner's trial exceeding one year was sufficient to trigger further analysis. (*Id.* at 6-7). However, regarding the reason for delay, the trial court found that all but one of the motions to continue were at Petitioner's insistence. (ECF No. 48-9

---

[2] W. Va. Code § 62-3-21 provides that an indictment must be dismissed if the defendant is not tried within three regular terms of court unless certain exceptions apply, such as if the continuance was requested by the defendant.

at 7). The trial court concluded that the State made no deliberate attempt to delay Petitioner's trial, and he benefitted from the delays in making further forensic investigations, obtaining favorable expert witness testimony, and searching for further exculpatory evidence. (*Id*. at 7-8). The trial court noted that Petitioner asked for continuances to the next term of court in response to late production of discoverable material, as opposed to seeking to exclude evidence or asking for shorter delays. (*Id*. at 4). This led into the third factor in which the trial court found that, contrary to any inference that Petitioner demanded a speedy trial, the bulk of the delays were attributable to his own motions. (*Id*.).

Finally, as to the fourth *Barker* factor, the trial court assessed whether Petitioner was prejudiced in light of three concerns (with the final consideration being the most important): whether Petitioner suffered (1) oppressive pretrial incarceration, (2) anxiety and concern, and (3) possible impairment of his defense. (*Id*. at 9) (citing *Barker*, 407 U.S. at 532). The trial court determined that not only was Petitioner's defense not impaired by the delay, but it was improved. (*Id*.). For all of the above reasons, the trial court denied the motion to dismiss the indictment on speedy trial grounds. (*Id*. at 11).

### 5. Destruction of Evidence

On December 13, 2007, Petitioner filed a motion to dismiss the indictment on the basis that the State destroyed certain materials, including some pieces of white paper with phone numbers and photographs believed to be Petitioner's property. *Elswick I*, 693 S.E.2d at 49. The materials had been mailed to Petitioner at the jail for him to possibly use in his defense, and they were stored with other evidence from the case, including the knife and lighter believed to be used in the crime, which police seized from Joey Hicks's mother's home. (ECF No. 9-22 at 16-17). According to Petitioner, all of the items were

released to Joey Hicks's mother when she came to pick up her son's personal property, and she tried to return Petitioner's items, but the police refused. (*Id.* at 17).

The trial court conducted a hearing on the motion to dismiss. *Elswick I*, 693 S.E.2d at 49. State Trooper Don Kitzmiller testified that these items had been discarded because they lacked evidentiary value. *Id.* The trial court inquired regarding the "possible relevance of the items seized that were thrown away or destroyed by Sergeant Kitzmiller," and Petitioner's counsel admitted that he did not have knowledge regarding exactly what those photographs or pieces of paper concerned. The trial court questioned the purpose of dismissing a murder indictment even though defense counsel could not identify any evidentiary value in the pieces of white paper or photographs. *Id.* Ultimately, the trial court concluded that Petitioner's defense had not been affected or prejudiced in any manner by the destruction of the contents of the plastic bag. *Id.*

### H. Second Trial, Conviction, and Sentencing

Petitioner's second trial was conducted in July 2008, the ninth term of court after his indictment. *Elswick I*, 693 S.E.2d at 44. He was represented by attorneys Benford and Morgan B. Hayes ("Hayes"). On July 11, 2008, a jury found Petitioner guilty of voluntary manslaughter, as a lesser included offense of murder, and one count of conspiracy. *Id.* A separate jury was empaneled in December 2008 to determine whether Petitioner qualified for a recidivist sentence under W. Va. Code § 61-11-18, which provides:

> When it is determined, as provided in §61-11-19 of this code, that such person shall have been twice before convicted in the United States of a crime punishable by imprisonment in a state correctional facility which has the same or substantially similar elements as a qualifying offense, the person shall be sentenced to imprisonment in a state correctional facility for life [...].

(ECF No. 5 at 2). The jury concluded that Petitioner was a recidivist under the statute

because he had two prior felony convictions for burglary and breaking and entering. (ECF No. 9-8 at 3). Therefore, on January 8, 2009, the trial court imposed a statutory sentence of life imprisonment.[3] *Elswick I*, 693 S.E.2d at 46.

## I.  *Direct Appeal*

Petitioner appealed his conviction to the Supreme Court of Appeals of West Virginia ("SCAWV") on May 21, 2009, raising eleven assignments of error:

> 1. The trial court erred on July 20, 2007, in denying Petitioner's motion to dismiss based upon Double Jeopardy when the prosecuting attorney caused a mistrial by commenting on Petitioner's failure to testify violating his constitutional privilege against self-incrimination;
>
> 2. The trial court erred on July 8, 2008, in denying Petitioner's renewed motion to dismiss based upon Double Jeopardy for the same reason;
>
> 3. The trial court erred in denying Petitioner's motion to dismiss based upon prosecutorial misconduct when the prosecutor did not disclose a plea agreement entered into by the State and John Richards to secure his testimony in violation of Rule 16 of the West Virginia Rules of Criminal Procedure and *Brady v. Maryland*, 373 U.S. 83 (1963);
>
> 4. The trial court erred on December 10, 2007, in denying Petitioner's request for dismissal for discovery violations;
>
> 5. The trial court erred in denying Petitioner's motion to dismiss for failure to provide a speedy trial in violation of the United States and West Virginia Constitutions and for violation of the statutory three-term rule contained in West Virginia Code § 62-3-21;
>
> 6. The trial court erred in denying Petitioner's motion to dismiss for destruction of evidence where the State admittedly disposed of Rule 16 materials without disclosing such materials to the defense thereby violating Petitioner's constitutional right to due process of law;

---

[3] In West Virginia, an inmate sentenced to life imprisonment who was previously convicted of two felonies is eligible for parole after 15 years. W. Va. Code § 62-12-13(c).

7. The trial court erred in refusing to give Petitioner's theory of defense instruction as offered thereby violating his constitutional right to due process of law;

8. The trial court erred in refusing to give Petitioner's jury instruction on battery as a lesser included offense thereby violating his constitutional right to due process of law;

9. The trial court erred in granting the State's motion to continue on July 9, 2009, thereby violating Petitioner's constitutional right to due process of law;

10. The trial court erred in refusing to employ the use of juror questionnaires as requested by Petitioner thereby violating his constitutional right to due process of law; and

11. The trial court erred in refusing to grant Petitioner's motion to dismiss the recidivist information.

(ECF No. 9-9 at 21-22). The SCAWV found that none of Petitioner's claims demonstrated reversible error and affirmed Petitioner's conviction on April 1, 2010, issuing its mandate on May 3, 2010. (ECF Nos. 9-13 at 2, 4-5; 9-14 at 2); *Elswick I*, 693 S.E.2d at 42.

### J. State Post-Conviction Proceedings

#### 1. First State Habeas Petition

On February 18, 2011, Petitioner filed a *pro se* petition for a writ of habeas corpus in the trial court. (ECF No. 9-17 at 6, 8, 10). Attorney Herbert Hively, II ("Hively"), was appointed to represent Petitioner, and he filed Petitioner's *Losh* checklist.[4] (*Id.* at 8). Petitioner raised twelve claims for relief. (*Id.* at 40-41). Eleven of those claims were identical to those raised by Petitioner on direct appeal to the SCAWV, and the parties agreed that all issues other than Petitioner's claims of ineffective assistance of counsel were barred by the doctrine of *res judicata*. (*Id.*); *Elswick v. Plumley*, No. 13-1110, 2014

---

[4] A *Losh* checklist is a list of all alleged trial errors that is filed by a petitioner in a state habeas proceeding. *See Losh v. McKenzie*, 277 S.E.2d 606 (W. Va. 1981).

WL 5328650, at *2 (W. Va. Oct. 20, 2014) ("*Elswick II*"). Therefore, the only claim under review in Petitioner's first state habeas petition was that his trial counsel was ineffective for the following reasons:

1. Trial counsel failed to properly advise Petitioner of the possible results of going to trial;

2. Trial counsel "refused" to complete "certain aspects of defense;"

3. Trial counsel failed to obtain "compulsory attendance of defense witnesses (Joe Hicks) and exculpatory evidence;"

4. Trial counsel "failed to continue to represent the case to the fullest extent of the law as was understood;" and

5. Other reasons to be determined after Petitioner reviewed the entire record.

(ECF No. 9-17 at 40). After conducting an omnibus evidentiary hearing on May 20, 2013, the trial court denied Petitioner's habeas petition. (*Id.* at 46-47; ECF Nos. 9-21 at 4; 6; 9-22 at 4, 6).

On October 28, 2013, Petitioner appealed the trial court's denial of his first state habeas petition. (ECF No. 9-15 at 2-3). He raised three assignments of error in his appeal to the SCAWV:

1. "Ineffective counsels;"

2.  Double Jeopardy; and

3. "non-waiver" of rights in his *Losh* checklist.

*(Id.* at 4). However, in his appellate brief, Petitioner—through Hively—raised only a single and very general assignment of error: the trial court erred in denying Petitioner's petition for the reasons stated in his previously filed writ of habeas corpus. (ECF No. 9-16 at 5). On October 20, 2014, the SCAWV affirmed the trial court's denial of Petitioner's habeas petition. (ECF No. 9-19 at 2); *Elswick II*, 2014 WL 5328650, at *1. The SCAWV issued its

mandate affirming the trial court's decision on November 19, 2014. (ECF No. 9-20 at 2).

### 2. Second State Habeas Petition

On March 24, 2015, Petitioner filed a second *pro se* habeas petition in the trial court, this time alleging ineffective assistance of habeas counsel Hively. (ECF No. 48-2). He alleged that Hively was ineffective in his first state habeas proceeding for the following reasons:

1. Hively failed to raise the ground, and develop facts related to, the issue of the ineffectiveness of trial counsel Benford and Hayes failing to object to the felony conviction of 93-F-16 being used in Petitioner's recidivist trial of 2008 as the aforesaid conviction was not valid for recidivist purposes because it had never been properly appealed or adjudicated.[5]

2. Hively did not raise the ground and develop facts thereto challenging the validity of the 93-F-16 breaking and entering conviction that was used to impose a recidivist sentence.

3. Hively failed to correctly perfect the habeas appeal brief in regard to the assertion that Benford and Hayes failed to file a certiorari with the United States Supreme Court after they had informed him that the certiorari would be done.[6]

4. Hively failed to submit an amended *Losh* List in the first state habeas proceeding and therefore failed to preserve certain grounds that the Petitioner wanted to raise at the omnibus hearing.

(ECF No. 48-2 at 5-7). Petitioner amended his petition to add the following claim:

1. Hively failed to raise and develop facts relating to the claim that Benford and Hayes were ineffective during Petitioner's trial for not challenging the use of his burglary conviction as a predicate felony for a recidivist sentence because the plea agreement in that case prohibited it being used against Petitioner in any later court proceedings.

---

[5] Petitioner clarified during his omnibus hearing that he did not mean to imply that he was unable to appeal the prior conviction. Rather, he claimed that he was unable to appeal the issue of using the prior conviction as a predicate in his 2008 recidivist proceeding. (ECF No. 48-4 at 6).

[6] Petitioner conceded that Hively filed the appeal, and the Supreme Court issued a decision. (ECF No. 48-4 at 9). His argument was that Hively's work on the appeal amounted to ineffective assistance. (*Id.*).

(ECF No. 48-3 at 2).

Petitioner was appointed new habeas counsel, D. Kyle Moore ("Moore"), who filed a motion for leave to conduct discovery and a motion for discovery, seeking transcripts from certain proceedings in Petitioner's underlying cases that were used to support his recidivist sentence. *Elswick v. Martin*, No. 17-0075, 2018 WL 1040357, at *1 (W. Va. Feb. 23, 2018) ("*Elswick III*"); *Elswick v. Binion*, No. 19-0087, 2020 WL 2910893, at *1 (W. Va. June 3, 2020) ("*Elswick IV*"). The trial court took "judicial notice of the court files in the previous habeas case and also in the two cases that formed the predicate for the [recidivist] information," and Petitioner and Hively provided testimony at an omnibus hearing. *Elswick IV*, 2020 WL 2910893, at *1.

By order entered on December 27, 2016, the trial court denied Petitioner's second petition for writ of habeas corpus. *Elswick III*, 2018 WL 1040357, at *2. Petitioner only appealed to the SCAWV the trial court's denial of Petitioner's motions for production of transcripts and discovery and leave to conduct discovery. *Id*. He claimed that he was denied the necessary facilities and procedures" for an adequate inquiry into his petition, and, if the trial court had granted his motions to conduct discovery, he "may" have been able to show that he was entitled to relief. *Id*. On appeal, the SCAWV found that Petitioner was not entitled to discovery in his habeas action as a matter of course, and he failed to establish good cause for leave to conduct discovery. *Id*. It noted that Petitioner summarily stated that discovery was necessary, but he did not articulate any reason that the requested evidence would assist in resolving the petition. *Id*. at *2–3. Therefore, the SCAWV affirmed the trial court's ruling on February 23, 2018. *Id*. at *3.

### 3. Third State Habeas

On March 20, 2018, Petitioner filed a third *pro se* habeas petition in the trial court.

He asserted the following claims that Hively was ineffective in his first habeas proceeding:

1.     Hively failed to raise the issue that Petitioner's trial counsel was ineffective in failing to object to the use of Petitioner's burglary conviction as a predicate felony in the recidivist trial.

2.     Hively failed to raise the issue that Petitioner's trial counsel was ineffective in failing to file a petition for a writ of certiorari in the Supreme Court of the United States.

(ECF No. 48-5). Petitioner conceded that the trial court had ruled on his ineffective assistance of counsel claims, but he asserted that his second habeas counsel, Moore, was ineffective by appealing only the discovery issue to the SCAWV in Petitioner's second habeas proceeding. *Elswick IV*, 2020 WL 2910893, at *2. The trial court summarily dismissed the petition on January 2, 2019, finding that the issues had been previously and finally adjudicated or waived. (ECF No. 48-6). The SCAWV agreed on appeal, concluding on January 2, 2019 that the petition was an impermissible successive petition barred by the doctrine of *res judicata. Elswick IV*, 2020 WL 2910893, at *2.

### K. Federal Habeas Proceedings

On December 8, 2014, Petitioner filed the instant § 2254 petition in this Court. (ECF No. 4 at 1). Petitioner raised thirteen grounds for relief:

1.     Double Jeopardy – the trial court erred by denying Petitioner's motion to dismiss on July 20, 2007, after the prosecutor caused a mistrial by commenting on Petitioner's silence during trial. (*Id*. at 5).

2.     Double Jeopardy – the trial court erred by denying Petitioner's renewed motion to dismiss for the same reason specified above on July 8, 2008. (*Id*. at 7).

3.     Prosecutorial misconduct in relation to the disclosure of the plea agreement with Richards. (*Id*. at 8).

4.     The trial court erred when it failed to dismiss the case for numerous discovery violations. (*Id*. at 10).

5.     The trial court erred in denying Petitioner's motion to dismiss for

17

violation of his right to a speedy trial. (*Id*. at 12).

6. The trial court erred in failing to dismiss the indictment for destruction of evidence. (*Id*. at 15).

7. The trial court erred in refusing to provide the jury with a theory of defense instruction. (*Id*. at 17).

8. The trial court erred in granting the State's motion for a continuance over the objection of Petitioner's counsel. (*Id*. at 19).

9. The trial court erred by refusing to allow defense counsel to use a jury questionnaire. (*Id*. at 21).

10. The trial court erred in failing to dismiss the recidivist information. (*Id*. at 23).

11. Trial counsel, Benford, was ineffective during the recidivist trial when he failed to "bring forward numerous witnesses" and "denied knowledge" of certain evidence. (*Id*. at 25). Trial counsel was also ineffective when he submitted motions to the trial court that Petitioner requested him not submit. (*Id*. at 26).

12. Habeas counsel Hively was ineffective when he failed to submit to the SCAWV an amended *Losh* list, and counsel incorrectly waived Petitioner's right to raise other claims by not doing so. (*Id*. at 28).

13. The trial court in a 1993 case, No. 93-F-16, which produced one of the convictions supporting Petitioner's recidivist sentence, failed to provide Petitioner with transcripts of the trial. (*Id*. at 30).

Petitioner also filed a memorandum in support of his § 2254 petition. (ECF No. 5). That memorandum is nearly identical to the brief filed by Petitioner on direct appeal to the SCAWV, and it failed to discuss grounds 12 and 13 of his petition. (*Compare* ECF No. 5 *with* ECF No. 9-9).

On December 9, 2014, the undersigned issued an order directing Respondent to answer Petitioner's petition within 75 days. (ECF No. 7 at 1). On February 20, 2015, Respondent filed an answer, (ECF No. 8), and a motion to dismiss the petition, (ECF No. 9). Respondent asserted in his motion to dismiss that some of the grounds for relief

18

alleged in Petitioner's § 2254 petition, specifically grounds 12 and 13, were unexhausted, creating a mixed petition that should be dismissed. (ECF No. 9 at 1). Additionally, Respondent contended that ground 13 of the petition was barred under the one-year statute of limitations in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. (*Id*.).

In response to Respondent's motion to dismiss, on March 17, 2015, Petitioner filed a motion to hold his § 2254 petition in abeyance, or in the alternative, to dismiss his petition without prejudice. (ECF No. 15). In his motion, Petitioner acknowledged that he had not exhausted his state court remedies for grounds 12 and 13 of his petition. (ECF No. 15 at 2). Respondent filed a responsive brief conceding that either form of relief would be proper, but maintaining that ground 13 should be dismissed with prejudice as untimely. (ECF No. 16 at 2). In reply, Petitioner contended that it would be appropriate for him to return to West Virginia state court and request state habeas relief on the ground that his counsel at the recidivist trial was ineffective for failing to challenge the validity of his conviction in 1993. (ECF No. 17 at 3). Therefore, according to Petitioner, ground 13 would not be barred by the one-year statute of limitations. (*Id*.) In the alternative, Petitioner insisted that he would be "satisfied" if the court held his petition in abeyance and struck ground 13, so that he would have the option to "refile" a similar ground when he returned to federal court after exhausting his state court remedies. (*Id*. at 3-4).

On May 1, 2015, the undersigned filed Proposed Findings and Recommendations, concluding that Petitioner failed to exhaust his state court remedies as to some of his claims. (ECF No. 18 at 2). Thus, he prematurely filed his federal habeas petition. (*Id*.). The undersigned recommended that the District Judge stay the case, hold his petition in abeyance while Petitioner exhausted his state court remedies, and strike ground 13 of his

petition. (*Id*.). The Court adopted the Proposed Findings and Recommendations on June 1, 2015. (ECF No. 19).

On August 13, 2021, Petitioner filed another § 2254 Petition, asserting mostly the same grounds as his initial petition with the addition of two claims:

1. Hively was ineffective in failing to assert in Petitioner's first habeas proceeding that trial counsel was ineffective for not challenging the use of Petitioner's prior felony conviction in his recidivist trial, although the plea agreement in that case prohibited it being used against him in future proceedings. (ECF No. 40 at 29).

2. Petitioner's second habeas counsel, Moore, failed to raise on appeal to the SCAWV the issue of Hively's above-specified ineffective assistance. (*Id*. at 31).

On October 13, 2021, the District Judge lifted the stay in this case. (ECF No. 42). Thus, on December 1, 2021, the undersigned ordered Respondent to answer the grounds raised in both of Petitioner's petitions. (ECF No. 44). On March 4, 2022, Respondent filed a motion to dismiss and memorandum in support. (ECF Nos. 48, 49). According to Respondent, some of Petitioner's claims are procedurally defaulted and unexhausted and should be dismissed, there is no genuine issue of material fact as to Petitioner's remaining claims, and Respondent is entitled to judgment as a matter of law. (ECF No. 48 at 1).

## II.    <u>Standard of Review</u>

Title 28 U.S.C. § 2254, as amended by AEDPA, authorizes a federal district court to entertain a petition for habeas corpus relief from a prisoner in state custody, "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When determining the merits of a § 2254 petition, the district court applies the standard set forth in § 2254(d), which provides that the habeas petition of a person in state custody "shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of

the claim" is:

(1) contrary to, or involves an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

Moreover, the factual determinations made by the state court are presumed to be correct and are only rebutted upon presentation of clear and convincing evidence to the contrary, 28 U.S.C. § 2254(e)(1). The burden of proof in a habeas action rests with the petitioner. *Cullen v. Pinholster,* 563 U.S. 170, 181 (2011) (citing *Woodford v. Visciotti,* 537 U.S. 19, 25 (2002). Accordingly, to succeed on a habeas petition, the petitioner must meet a difficult standard—one "which demands that state-court decisions be given the benefit of the doubt." *Woodford,* 537 U.S. at 24. Thus, when reviewing a petition for habeas relief, the federal court uses a "highly deferential lens." *DeCastro v. Branker*, 642 F.3d 442, 449 (4th Cir. 2011).

A claim is generally considered to have been "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." *Thomas v. Davis*, 192 F.3d 445, 455 (4th Cir. 1999). The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have separate and independent meanings. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court decision warrants habeas relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's." *Lewis v. Wheeler*, 609

21

F.3d 291, 300 (4th Cir. 2010) (quoting *Williams*, 529 U.S. at 405) (internal quotations omitted). The district court may grant a habeas writ under the "unreasonable application" clause if the state court "identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular case." *Id.* at 300–01 (internal marks omitted).

Accordingly, the AEDPA limits a federal habeas court's scope of review to the reasonableness, rather than the correctness, of the state court's decision. A federal court may not issue a writ under this standard "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather the application must also be unreasonable." *Williams*, 529 U.S. at 365. "A state court's decision is unreasonable where it is 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Valentino v. Clarke*, 972 F.3d 560, 580 (4th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Respondent argues that some of Petitioner's claims are procedurally defaulted and unexhausted. Under West Virginia law, claims are generally considered waived and therefore procedurally defaulted when the party seeking review fails to raise the issue in an available pretrial, trial, appellate, or post-conviction process. West Virginia Code § 53-4A-1(c); *Joseph v. Plumley*, No. 2:13-cv-28391, 2016 WL 8488201, at *13 (S.D.W. Va. Oct. 11, 2016). Federal courts are ordinarily barred from reviewing federal claims that were procedurally defaulted in state court because such claims have been resolved "pursuant to an independent and adequate state procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Bush v. Legursky*, 966 F.2d 897, 900 (4th Cir. 1992) ("We do not sit as the Super-Supreme Court of West Virginia, and we will not lightly advise the state courts

that they have misinterpreted their own law."); *Talbert v. Plumley*, No. 3:14-CV-22222, 2015 WL 5726945, at *1 (S.D.W. Va. Sept. 30, 2015) (holding that claims not raised on direct appeal or state habeas appeal were procedurally defaulted).

An exception exists that allows federal review of claims procedurally defaulted under state law if the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. To show cause, the petitioner "must establish 'that some objective factor external to the defense impeded counsel's efforts' to raise the claim in state court at the appropriate time." *Breard v. Pruett*, 134 F.3d 615, 620 (4th Cir. 1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show prejudice, the petitioner must show that errors at trial "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Alternatively, to establish that failure to review the procedurally defaulted claims constitute a miscarriage of justice, the petitioner must show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496.

In addition, a narrow exception allows a federal court to hear a claim of ineffective assistance of counsel otherwise barred from review by procedural default if (1) the petitioner was unable to raise ineffective assistance of counsel until his first collateral proceeding; and (2) the petitioner did not have the benefit of effective counsel in the first collateral proceeding. *Martinez v. Ryan*, 132 S. Ct. 1309, 1315-1320 (2012). In short, a federal court may review a procedurally defaulted ineffective assistance of counsel claim if counsel was ineffective in the first habeas proceeding.

23

Here, Respondent moved to dismiss Petitioner's procedurally defaulted and unexhausted claims and enter judgment in his favor as to the remaining grounds in the petition. However, the distinction makes no practical difference as the same standard of review applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6) and motions for judgment on the pleadings under Fed. R. Civ. P. Rule 12(c), and both motions may be filed in § 2254 actions. *Walker v. Kelly*, 589 F.3d 127, 138-39 (4th Cir. 2009).

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nevertheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings in a § 2254 case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, when resolving the motion without converting it into a motion for summary judgment. *Id. Pro se* filings are construed liberally by the Court. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed") (citation and marking omitted).

## III. <u>Discussion</u>

To properly review the decision of a state court in a § 2254 petition, this court must consider the factual determinations and reasoning that are being challenged. In this case,

the trial court conducted multiple omnibus evidentiary hearings and gathered extensive testimony, in addition to taking judicial notice of the records of Petitioner's past felony convictions, before rendering its opinions denying Petitioner's habeas claims, which the SCAWV reviewed and affirmed. Petitioner must surmount the extremely high bar of showing that the state court decisions he challenges were unreasonable. *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010) ("Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part."). In the context of a § 2254 petition, a constitutional error will warrant relief only if the error "'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). With those considerations in mind, the undersigned analyzed the habeas claims presented in Petitioner's § 2254 petition and amended petition.

### A. *Double Jeopardy*

Petitioner claims that the trial court erred by denying his motions to dismiss the indictment based on double jeopardy after the prosecutor caused a mistrial by commenting on the fact that Petitioner did not testify. (ECF Nos. 4 at 5-8; 5 at 21; 40 at 5, 7). The Fifth Amendment to the United States Constitution, which applies to the States through the Fourteenth Amendment, guarantees, *inter alia*, that a criminal defendant shall not be compelled to be a witness against himself (right to remain silent) and prohibits the government from prosecuting a defendant multiple times for the same offense (double jeopardy). U.S. CONST. amend. V.

When a prosecutor comments on a defendant's refusal to testify, it infringes on the defendant's Fifth Amendment right against self-incrimination if the reviewing court

determines the comment: (1) was improper and (2) so prejudicially affected the defendant's substantial rights as to deprive him or her of a fair trial. *United States v. Hunter*, 464 F. App'x 177, 179 (4th Cir. 2012). Conversely, "a prosecutor's statement does not amount to an improper comment on a defendant's refusal to testify unless, in context, the offending language was manifestly intended to be, or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Id.* (citations and markings omitted). The critical inquiry is "whether the comment invited the jury to draw an inference of guilt against the defendant." *Id.*

Double jeopardy "attaches when the jury is empaneled and sworn," and, once it attaches, "a defendant has a constitutional right to have a particular tribunal decide his guilt or innocence." *Gilliam v. Foster*, 61 F.3d 1070, 1078–79 (4th Cir. 1995) (citing *Crist v. Bretz*, 437 U.S. 28, 35-36 (1978)). *Id.* However, the right to have a particular jury decide a defendant's guilt or innocence is not absolute, such as in the case of a mistrial. When there is a mistrial, the determination of whether the defendant can be reprosecuted depends on whether the mistrial was declared without defendant's consent, or was requested by the defendant. If the defendant did not request or consent to the mistrial, the Fifth Amendment bars retrial unless there was a manifest necessity for the mistrial or the ends of public justice would otherwise be defeated. *United States v. Dinitz*, 424 U.S. 600, 606–07 (1976) (citations omitted).

On the other hand, if the defendant requested or consented to a mistrial, it ordinarily removes any barrier to reprosecution under the double jeopardy clause of the Fifth Amendment. *Id.*; *United States v. Borromeo*, 954 F.2d 245, 247 (4th Cir. 1992). In *Oregon v. Kennedy*, 456 U.S. 667, 676 (1982), the Supreme Court held that retrial of a defendant who requested a mistrial violates the double jeopardy clause only when the

defendant proves that the prosecutor provoked or goaded the defendant into moving for mistrial with the intent to avoid double jeopardy. "Harassing or overreaching conduct does not suffice absent intent," and the "burden of proof is on the defendant to show that the prosecutor intentionally provoked him." *United States v. Staton*, No. 93–5561, 1994 WL 233485, at *4 (4th Cir. May 31, 1994).

In Petitioner's first trial, Prosecutor Sergent made the following statement in his closing argument:

> Now, in this case, we know from Mr. Matthews what happened on Market Street, eyewitness testimony. We know from Bill Jeffries and Roger Simmons who was in the car; direct, eyewitness testimony. Joan Knicely, direct eyewitness testimony. Burns was here; they accused him of something; he was gone; Joey was gone; Crystal was gone; Raymond was gone. Okay, ladies and gentlemen, as prosecutor, the next direct evidence I have is out here. Who knows what happened from there to there? There were only four people in the car. ***I can't call Mr. Elswick as a witness, he has a right to remain silent*** –

(ECF No. 48-7 at 19-20) (emphasis added). Petitioner immediately moved for a mistrial, which the trial court granted on the basis that the statement constituted an indirect and unintentional reference to the fact that the Petitioner had not testified during trial. *Elswick I*, 693 S.E.2d at 43. Petitioner then moved to dismiss the indictment and bar retrial based on double jeopardy. During the hearing on that motion, Prosecutor Sergent testified that his remark that resulted in the mistrial was an unintentional comment on Petitioner's right to remain silent. *Elswick I*, 693 S.E.2d at 45. *Id*. Prosecutor Sergent stated that he was attempting to explain why he called Petitioner's accomplices, Crystal and Joey Hicks, as witnesses when he inadvertently made the statement in question. *Id*. Prosecutor Sergent testified that he "did not purposefully make a statement to cause a mistrial," and, as the State had completed its case, he had no reason to "throw" the jury. *Id*.

27

Ultimately, the trial court determined that "while the remark did indeed constitute reversible error by the State, there was no evil intent, no motivation to harass or prejudice [Petitioner], and no bad faith." *Id.* Therefore, the trial court "found that double jeopardy would not bar retrial because the prosecutor's statements were not made in an intentional attempt to provoke a mistrial." *Id.* The trial court denied Petitioner's motion to dismiss the indictment. *Id.* On appeal, the SCAWV found that the evidence did not "suggest the existence of a blatant remark designed to instigate the granting of a mistrial," but rather, the evidence compelled the conclusion that the remark in question was an inadvertent reference to Petitioner's failure to testify. *Id.* The SCAWV determined that, although the remark properly resulted in a mistrial, it was not of the nature to justify a double jeopardy prohibition of retrial. *Id.* Therefore, the SCAWV concluded that the trial court did not err in denying Petitioner's motion to dismiss the indictment. *Id.*

Petitioner does not show that the SCAWV's determination was contrary to or involved an unreasonable application of clearly established Federal law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Nothing in the record suggests that the court erred in finding that Prosecutor Sergent did not intend to provoke a mistrial. In fact, the record demonstrates that Prosecutor Sergent implored the Court not to order a mistrial and suggested the option of a cautionary jury instruction. (ECF No. 48-8 at 6-7).

Prosecutor Sergent made an isolated comment in his closing argument indicating that there were only four witnesses to certain events: Petitioner, Burns, and Crystal and Joey Hicks. Given that Burns was deceased, and Petitioner was on trial, Prosecutor Sergent attempted to explain that he used Petitioner's accomplices, Crystal and Joey Hicks, as witnesses to fill in the gaps in information. The SCAWV did not unreasonably

determine that Prosecutor Sergent's reference to Petitioner's right to remain silent was inadvertent as he discussed the Hicks' testimony. The evidence is consistent with the SCAWV's determination. Petitioner had the burden of proving that Prosecutor Sergent specifically intended to provoke the mistrial or otherwise displayed bad faith or intent to harass Petitioner. In this case, he simply did not meet that burden. *See, e.g., United States v. Wentz*, 800 F.2d 1325, 1328 (4th Cir. 1986). The undersigned **FINDS** that the SCAWV's determination of this claim was not contrary to or an unreasonable application of clearly established Federal law, or an unreasonable determination of the facts.

### B. Speedy Trial

Petitioner claims that the trial court erred in denying his motion to dismiss the indictment for violations of the speedy trial provisions of the United States and West Virginia Constitutions and three-term rule contained in W. Va. Code § 62-3-21.[7] (ECF Nos. 4 at 12-13; 5 at 21, 30; 40 at 12). Under the Sixth Amendment to the United States Constitution, which applies to the States through the due process clause of the Fourteenth Amendment, the accused in all criminal prosecutions "shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The Sixth Amendment right to a speedy trial is triggered when a defendant is indicted or arrested. *Jones v. Angelone,* 94 F.3d 900, 906 n. 6. (4th Cir. 1996).

Federal courts apply a four-part test to evaluate a Sixth Amendment speedy trial claim: (1) whether the delay was uncommonly long; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the defendant suffered prejudice. *United States v. Shealey*, 641 F.3d 627, 634 (4th Cir. 2011) (citing

---

[7] W. Va. Code § 62-3-1 provides that an indictment must be dismissed if the defendant is not tried within three regular terms of court unless certain exceptions apply, such as if the continuance was requested by the defendant.

*Barker v. Wingo,* 407 U.S. 514 (1972)). "The four-pronged *Barker* analysis is a "balancing test," which "necessarily compels courts to approach speedy trial cases on an ad hoc basis," and "no one prong is dispositive." *VanHoose v. Seifert*, No. 3:11-cv-0448, 2012 WL 1111480, at *3 (S.D.W. Va. Mar. 30, 2012), *aff'd,* 474 F. App'x 987 (4th Cir. 2012) (citing *Barker,* 407 U.S. at 530).

In addition to being a factor, the first inquiry regarding the length of the delay is also a threshold requirement because "simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay." *United States v. Woolfolk,* 399 F.3d 590, 597 (4th Cir. 2005) (quoting *Doggett v. United States,* 505 U.S. 647, 651–52 (1992) (internal markings omitted)). In *Woolfolk,* the Fourth Circuit discussed the length of time that is generally considered "presumptively prejudicial," noting that the Supreme Court had found eight months to be "substantial" and one year to be the "point at which courts deem the delay unreasonable enough to trigger the *Barker* inquiry." *Woolfolk*, 399 F.3d at 597–98 (quoting *Doggett v. United States,* 505 U.S. at 652 n.1) (internal markings omitted).

In this matter, the SCAWV found on appeal that the trial court properly determined that the delays in Petitioner's trial did not violate West Virginia Code § 62–3–21, or Petitioner's constitutional right to a speedy trial. *Elswick I,* 693 S.E.2d at 49. The SCAWV discussed that the trial court appropriately considered the four *Barker* factors,[8] including the fact that the delays were not exclusively attributable to the State. *Elswick I,*

---

[8] The SCAWV adopted the *Barker* framework in Syl. Pt. 2, *State v. Foddrell,* 297 S.E.2d 829 (1982). Thus, the SCAWV often refers to the four-part test as the "*Foddrell* analysis" or "*Foddrell* factors."

693 S.E.2d at 48. The SCAWV pointed to the trial court's analysis which showed that, although many of the trial continuances were precipitated by delayed production of forensic testing and other evidence, some of the delays were for Petitioner's benefit in the form of further forensic investigations, obtaining favorable expert testimony, and further development of exculpatory information. *Id.*

The SCAWV agreed with the trial court that there was no indication that the State deliberately delayed trial, intentionally withheld evidence, or took any other calculated action to gain a tactical advantage. *Id.* Furthermore, the trial court emphasized that, other than waiting for months for trial, there was virtually no prejudice to Petitioner from the continuances. *Elswick I,* 693 S.E.2d at 49. For those reasons, the SCAWV found no error by the trial court in refusing to dismiss the indictment based upon the periods of delay. *Id.* The SCAWV stated that the reasons for each of the delays were addressed by the trial court, and the remedy for such delays was appropriately determined to be continuances. *Id.* Therefore, the SCAWV found that neither a violation of West Virginia Code § 62–3–21, nor a violation of the speedy trial constitutional protection occurred in Petitioner's case.

As an initial matter, Petitioner's claim that the trial court violated West Virginia Code § 62–3–21 is not cognizable on federal habeas review because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* Therefore, the sole issue before this Court is whether the SCAWV's determination that the trial court did not violate Petitioner's Sixth Amendment right to a speedy trial was contrary to or an unreasonable application of

31

clearly established Federal law, or an unreasonable determination of the facts.

Petitioner claims that the delays should have been attributed to the State because he was goaded into requesting continuances that would never have been necessary if the State timely produced discovery materials. (ECF No. 5 at 31-32). He further argues that it was the State's duty to provide a speedy trial, regardless of whether he requested it. (*Id.* at 32). Finally, Petitioner contends that prejudice should be presumed because he was incarcerated almost three years awaiting trial. (*Id.* at 33-34). Petitioner posits that, although the continuances may have ultimately benefitted him, they would never have been necessary if not for the State's late disclosures, and he would not have been incarcerated for so long prior to trial. (*Id.* at 34).

There is no dispute in this case that the length of the delay between Petitioner's arrest and his trial was significant. He was arrested in May 2005; his first trial did not take place until April 2007, resulting in a mistrial; and his second trial did not occur until July 2008. The trial was continued for the following reasons:

1. On October 21, 2005, the State moved to continue the trial due to DNA testing delays.
2. On October 24, 2005, Petitioner moved to continue the trial to permit time for competency testing.
3. On March 24, 2006, the State moved to continue the trial due to the fact that scientific testing results had not been received.
4. On May 24 or 25, 2006, in response to the State's disclosure of DNA evidence, scientific evidence, and footprint analysis, Petitioner moved to continue to allow for independent expert testing.
5. On September 26, 2006, the State disclosed several new items of evidence, constituting the State's fourteenth supplemental disclosure and including such items as a blood identification report, DNA report, and footwear comparison report. Then, on October 2, 2006, the State made its fifteenth supplemental disclosure, containing more evidence from the State Police Lab, which resulted in yet another continuance request by the Petitioner because the photographs provided were of poor quality.
6. On the morning of scheduled trial on February 20, 2007, the State disclosed a Crime Scene Report dated July 7, 2005, as well as fifty

       photographs of the crime scene. Thus, Petitioner requested another continuance.

7. On the day of the rescheduled trial, June 24, 2007, Petitioner moved to continue based upon his recent discovery of Richards as a possible witness in his case.

8. On July 25, 2007, the State submitted its twenty-fourth supplemental disclosure, including information about the lighter and knife used in the crime and thereafter allegedly in Joey Hicks's possession. Trial was continued to December 10, 2007 to allow for DNA testing by both parties' experts.

9. On January 9, 2008, the lighter was provided to Petitioner's expert. Petitioner moved for a continuance in March 2008 to complete further forensic testing.

*Elswick I,* 693 S.E.2d at 43; (ECF Nos. 5 at 4-9, 48-9 at 2-3).

       The SCAWV determined that, despite the length of delay, the reason for the delays and absence of prejudice to Petitioner weighed against a determination that Petitioner was denied his right to a speedy trial. The crux of Petitioner's speedy trial claim was that, if the government had timely disclosed evidence, continuances would never have been necessary, and he would not have been incarcerated for so long prior to trial. However, Petitioner fails to rebut the SCAWV's findings that he was also responsible for the delays, and he suffered no material prejudice; if anything, some of the delays allowed Petitioner to further develop his defense through forensic analysis. Petitioner requested a continuance for a competency evaluation, and, as the SCAWV pointed out, he chose to move for continuances to the next court terms in response to newly disclosed evidence instead of moving to exclude the evidence or request shorter continuances. Petitioner gained additional evidence to support his case as a result of the continuances. While it is true that he might have developed the same support for his case if the State had disclosed evidence earlier in discovery, he fails to offer anything to rebut the state courts' well-reasoned findings that the State did not intentionally withhold evidence or otherwise act in bad faith.

Furthermore, as to prejudice, Petitioner does not offer any facts to support his assertion that his delayed trial "diminish[ed] his chances of innocence." (ECF No. 40 at 12). Incarceration for an inordinate period of time can constitute prejudice, but, in this case, the SCAWV found that Petitioner's involvement and benefit from the continuances and the lack of impact on his conviction, on balance, outweighed any Sixth Amendment speedy trial concerns. Overall, the undersigned **FINDS** that the SCAWV's determination of this claim was not contrary to or an unreasonable application of clearly established Federal law, or an unreasonable determination of the facts.

### C. Jury Instructions

Petitioner presents two claims concerning the jury instructions in his case. "On collateral review of a state trial court's jury instructions, a federal court exercises a limited role and the inquiry is narrow." *Rabb v. Ballard*, No. 2:09-CV-00159, 2011 WL 1299359, at *72 (S.D.W. Va. Feb. 24, 2011), *report and recommendation adopted,* 2011 WL 1299354 (S.D.W. Va. Mar. 31, 2011) (markings and citations omitted). In general, "alleged errors in the instructions given by a trial court are not cognizable on federal habeas review, because they raise issues of state law, not federal constitutional law." *Id.* Rather, a "federal court may grant habeas relief only when the challenged instruction by itself so infected the entire trial that the resulting conviction was undesirable, erroneous, or even universally condemned. *Id.*; *see also Ingram v. Daniels*, No. 5:15-HC-2279-FL, 2017 WL 979019, at *10 (E.D.N.C. Mar. 13, 2017); *Roberts*, 2014 WL 4929403, at *34; *Johnson v. Plumley*, No. 3:13-CV-133, 2014 WL 3735856, at *14 (N.D.W. Va. July 29, 2014). Furthermore, an omission of a required jury instruction is "less likely to be prejudicial than a misstatement of the law." *Rabb*, 2011 WL 1299359, at *72; *Roberts*, 2014 WL 4929403, at *34.

### 1. Theory of Defense Instruction

Petitioner argues that the trial court erred in refusing to give the following jury instruction:

> It is the theory of the Defendant, Raymond Elswick, that he is not guilty of any criminal offense nor did he conspire to commit any criminal offense because he was not an active or willing participant and/or co-conspirator in the death of Daniel Burns. It is Raymond Elswick's position that Joey Hicks and Crystal Hicks have given false information to law enforcement and to the State of West Virginia. Moreover, it is Raymond Elswick's position that Joey Hicks and Crystal Hicks have falsely testified against him for their own reasons, such as to obtain their favorable plea bargains by minimizing their roles in the death of Daniel Burns and providing a target for the prosecution other than themselves for the government to hold accountable for death of Daniel Burns. The State of West Virginia and the Defendant, Raymond Elswick, have submitted evidence through testimony of witnesses. Under West Virginia law, before you can find Raymond Elswick guilty of the crimes charged in this case, the State must prove each and every one of the elements of the particular crime and the State must prove beyond a reasonable doubt that the acts of Raymond Elswick were voluntary and not procured by threats of harm and that his fears were not reasonable under the circumstances. If the State proves that Raymond Elswick voluntarily committed each and every element of a particular crime beyond a reasonable doubt you must find him guilty of that crime. However, if [you] find that the Government has not proven Raymond Elswick voluntarily committed each and every element of a particular crime beyond a reasonable doubt then you must find him NOT GUILTY of that particular crime.

(ECF Nos. 4 at 17; 5 at 22, 45; 40 at 16; 48-10 at 5-6).

Considering this claim on appeal, the SCAWV noted that the trial court instructed the jury regarding witness credibility, and any potential for false testimony could have been evaluated through the jury's application of that instruction to the testimony presented to them. *Elswick I,* 693 S.E.2d at 50. The SCAWV further explained that trial courts have broad discretion to formulate jury instructions, and the wording of instructions would not be dissected on appeal. *Id.* at 50-51. Rather, the instructions would be reviewed as a whole under an abuse of discretion standard to determine whether the

instructions accurately stated the law and were fair to both parties. *Id*. The SCAWV concluded that the instructions were precise, accurate, and fair in Petitioner's case because the instructions exhaustively defined the elements of the offenses charged in the indictment and specifically included a section concerning witness credibility and the jury's duty to weigh the evidence. *Elswick I,* 693 S.E.2d at 51. Therefore, the SCAWV found that the trial court did not abuse its discretion in not giving Petitioner's requested instruction. *Id*.

Petitioner takes issue with the fact that the trial court gave a modified version of his proposed instruction, stating that the jury should "use any reasonable common [sense] indication that they could find" in judging the reliability of witnesses' testimony, and, even if a statement from a witness was partially unreliable, parts of it could be reliable. (ECF Nos. 4 at 17, 5 at 45, 40 at 16). However, Petitioner does not show that the trial court's failure to give his proposed "theory of defense" jury instruction was so fundamentally unfair as to deny him due process and a fair trial. He concedes that the jurors were instructed to evaluate the witnesses' reliability, and he does not argue that the trial court misstated the law in the jury instructions. While Petitioner may have preferred different wording, he does not state a claim for federal habeas relief. *See, e.g., Roberts*, 2014 WL 4929403, at *34 ("Inasmuch as the petitioner is claiming he was denied an instruction on his theory of defense, this claim would still fail. Failure to give an appropriate theory-of-defense instruction, without more, is not a violation of the Due Process Clause. Some other circumstances, demonstrating a serious miscarriage of justice, must be present.") (citation omitted); *Rabb*, 2011 WL 1299359, at *73 ("Thus, unless Petitioner can show that the failure to give his instruction was so fundamentally unfair as to deny him due process and a fair trial, this claim is not cognizable."). For those

reasons, the undersigned **FINDS** that the SCAWV's determination of this claim was not contrary to or an unreasonable application of clearly established Federal law, or an unreasonable determination of the facts.

### 2. Battery Instruction

Petitioner next argues that the trial court erred in refusing to instruct the jury on battery as a lesser included offense of murder. (ECF No. 5 at 22). He raised this claim in his direct appeal, and the SCAWV noted that, under West Virginia law, battery is not a lesser included offense of murder. *Elswick I,* 693 S.E.2d at 51. The SCAWV further reiterated that the formulation of jury instructions is left to the sound discretion of the trial court, and they would not be disturbed absent an abuse of discretion. *Id*. The SCAWV concluded that Petitioner did not present any legitimate argument contesting the jury's finding that his actions contributed to Burns's death or that there was insufficient evidence to convict him of voluntary manslaughter, nor did he assert any valid argument that the trial court was required to instruct the jury on battery as a lesser included offense of the crimes with which he was charged. *Id*.

Consistent with the due process clause, courts must instruct jurors on any lesser included offense when the evidence warrants such an instruction in capital cases. *Beck v. Alabama*, 447 U.S. 625, 637-38 (1980). A lesser included offense instruction is proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser included offense. *Lind v. Ballard*, No. 2:14-CV-26284, 2022 WL 1063518, at *4 (S.D.W. Va. Apr. 8, 2022) (citing *Sansone v. United States*, 380 U.S. 343, 350 (1965)).

However, Petitioner was not charged with a capital offense, nor is battery a lesser included offense of murder in West Virginia. *Id*. (stating that *Beck* did not apply to the

petitioner's case because the Supreme Court explicitly limited its holding to capital offenses); *Elswick I,* 693 S.E.2d at 51 (citing prior holding that battery is not lesser included offense of murder). Furthermore, the SCAWV found that a battery instruction was not warranted in Petitioner's case, and the Fourth Circuit has held that:

> Where the highest court of a state has reviewed a defendant's request for a lesser included offense instruction and concluded that it is not warranted by the evidence elicited at trial, that conclusion is axiomatically correct, as a matter of state law. Accordingly, the circumstances that would induce a federal court to overturn the state court determination would need to be extraordinary, indeed.

*Lind*, 2022 WL 1063518, at *4 (quoting *Bates v. Lee*, 308 F.3d 411, 418 (4th Cir. 2002)).

Petitioner does not demonstrate that the SCAWV's determination that he was not entitled to a battery instruction "was so wrong as to amount to a fundamental miscarriage of justice." *Id.* (quoting *Bates*, 308 F.3d at 418). He contends that, other than his accomplices, Crystal and Joey Hicks, the only direct eyewitness to the events was a neighbor who saw Petitioner kick Burns. (ECF No. 5 at 46). Therefore, he believes that the jury should have been instructed on the crime of battery as a lesser included offense of murder, but he does not offer any facts or legal support that a battery instruction was required in his case. For those reasons, the undersigned **FINDS** that the SCAWV's determination of this claim was not contrary to or an unreasonable application of clearly established Federal law, or an unreasonable determination of the facts.

### D. Discovery Violations

Petitioner claims that the trial court erred in denying his motions to dismiss based on the State's discovery violations. (ECF Nos. 4 at 8-11, 13; 5 at 21; 40 at 8). Specifically, Petitioner alleges that Prosecutor Sergent did not disclose a November 2005 plea agreement that a prosecutor in a neighboring county entered into with Richards, a man who shared a jail cell with Joey Hicks, in order for him to testify against Petitioner.

Petitioner further claims that Prosecutor Sergent committed ongoing discovery violations "throughout the whole time period of the case" and failed to disclose documents, evidence, and witnesses. (ECF Nos. 4 at 8-11, 13; 5 at 21; 40 at 8).

Petitioner raised these claims on direct appeal. He argued that Prosecutor Sergent should have immediately disclosed Richards's statement and plea agreement upon receiving that information in 2005 so that Petitioner could use the information to impeach Joey Hicks's testimony if it had been introduced. *Elswick I,* 693 S.E.2d at 45. The SCAWV considered the claim exclusively under West Virginia law, stating that the preferred relief for a discovery violation when the prosecutor had not acted in bad faith was to grant the defendant a continuance and give him or her an opportunity to prepare for trial once the discovery materials have been made available. *Id.* at 46. The SCAWV considered Prosecutor Sergent's testimony during the motion to dismiss hearing that he was out of town when the fax from the Calhoun County Prosecutor's Office arrived concerning Richards, and he was unaware of it until Petitioner raised the issue on July 23, 2007. *Id.* In addition, Prosecutor Sergent testified that the clerk was fired for not following proper protocol concerning the fax, and he reviewed his entire file in this case and had not located the fax in question. *Id.*

Moreover, the SCAWV noted that Joey Hicks only testified during Petitioner's initial trial that resulted in a mistrial, and his testimony was not offered in Petitioner's second trial, which resulted in his conviction under appeal. *Elswick I,* 693 S.E.2d at 45 n.2. Likely, it was because Joey Hicks's testimony was impeached by prior inconsistent statements that he made to law enforcement officers, as well as by testimony from his wife, Crystal Hicks, during Petitioner's initial trial. *Id.* at 46. The trial court observed that Mr. Hicks's testimony was "so utterly discredited that the question arose why the

prosecutor even bothered calling him as a witness" in Petitioner's initial trial. *Elswick I*, 693 S.E.2d at 46.

For those reasons, the SCAWV determined that the trial court's selection of a continuance as the appropriate resolution of this matter was not erroneous. *Id.* at 47. The SCAWV noted that a continuance allowed development of the issues surrounding what the trial court correctly termed "marginally material" evidence of Mr. Richards's reference to Joey Hicks's possession of a lighter and knife when he was arrested in May 2005. *Id.* This SCAWV stated that it declined to disturb the trial court's method of handling this issue. *Id.*

The Supreme Court established in *Brady v. Maryland,* 373 U.S. 83 (1963) that "prosecutors have an affirmative duty to disclose evidence that is both favorable to the defendant and 'material either to guilt or punishment.'" *Fuller*, 2018 WL 3398129, at *3 (quoting *Brady*, 373 U.S. at 87). The Supreme Court explained that suppression of "such evidence is a violation of the defendant's Fifth Amendment right to Due Process." *Id.* Evidence is considered "material" under *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different" and a "reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). "Material evidence that falls under *Brady* includes both exculpatory evidence and impeachment evidence, which is often called '*Giglio* material.'" *Id.* (citing *Bagley*, 473 U.S. at 676). The prosecution is obligated to disclose *Brady* and *Giglio* material regardless of whether the defense requests it. *Id.* There are three necessary elements to prove a *Brady* violation. The defendant must "show that the undisclosed evidence was (1) favorable to him either because it is exculpatory, or because it is

impeaching; (2) material to the defense, *i.e.*, 'prejudice must have ensued'; and (3) that the prosecution had materials and failed to disclose them." *Id.* at *4 (quoting *United States v. Wilson*, 624 F.3d 640, 661 (4th Cir. 2010)). A *Brady* violation does not occur, however, "where the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked." *Id.* (citing *United States v. Wilson*, 901 F.2d 378, 381 (4th Cir. 1990)).

Petitioner simply cannot establish that he suffered any prejudice from the State's late disclosure of Richards's statement and plea agreement. Petitioner raised the issue before the trial court, which granted him a continuance to investigate that information. The alleged *Brady* violation had no conceivable impact on Petitioner's conviction, given that the witness who was to be impeached with the statement did not testify at trial. In addition, Petitioner fails to assert any viable claim regarding his general argument that the trial court erred in denying his motion to dismiss the indictment because of numerous alleged discovery violations. The SCAWV found that Petitioner did not provide any legal or factual reasoning to undermine the trial court's decision to grant continuances under the circumstances. Petitioner does not offer any basis for this Court to question that finding.

For those reasons, the undersigned **FINDS** that the SCAWV's determination of this claim was not contrary to or an unreasonable application of clearly established Federal law, or an unreasonable determination of the facts.

### E.  Motion to Continue

Petitioner asserts in his federal habeas petition that the trial court erred in granting the State's motion to continue during his recidivist trial on December 8, 2008. (ECF Nos. 4 at 19, 5 at 4-6, 40 at 18). He indicates that the State had told a witness to show up on a

different day, was admonished by the trial court, and trial was continued to the following day. (ECF No. 4 at 19). On direct appeal, the SCAWV acknowledged that the trial court recessed the recidivist trial in order for the State to call a witness to present original fingerprint cards. *Elswick I,* 693 S.E.2d at 51. The SCAWV concluded that Petitioner did not provide any pertinent authority to support his claim, and continuances are left to the discretion of the trial court, only being reviewed for an abuse of discretion. *Id.* The SCAWV decided that it was hardly an abuse of discretion for the trial court to delay the trial one day to allow the State to call a witness to introduce original fingerprint cards. *Id.* at 51-52.

Petitioner does not sufficiently articulate this claim to explain how it violated his rights or prejudiced him in any manner. A one-day recess certainly does not assert any claim of constitutional magnitude. Therefore, the undersigned **FINDS** that the SCAWV's determination of this claim was not contrary to or an unreasonable application of clearly established Federal law, or an unreasonable determination of the facts.

### F.  *Juror Questionnaires*

Petitioner next argues that the trial court erred in refusing to submit the questionnaires that he proposed to prospective jurors during voir dire. (ECF Nos. 4 at 21, 5 at 46-47, 40 at 20). The SCAWV considered this claim, noting that the trial court denied Petitioner's motion because written questionnaires are not necessary to seat a qualified, fair, and impartial jury. *Elswick I,* 693 S.E.2d at 52. The SCAWV explained that, like trial continuances, the inquiries made to jurors during voir dire are left to the discretion of the trial court, and they not subject to review unless the trial court clearly abused its discretion. *Id.* The SCAWV concluded that "[t]here is no authority requiring a court to issue the requested juror questionnaire to jurors during voir dire, and there were no

42

extenuating circumstances in this case which would have supported the use of such questionnaire." *Id*. Therefore, the SCAWV found no reversible error concerning this issue. *Id*.

The Sixth and Fourteenth Amendments guarantee a defendant the right to an impartial jury. *Blakeney v. Lee*, No. 3:05 CV-10-V, 2007 WL 1341456, at \*51 (W.D.N.C. May 3, 2007), *aff'd sub nom. Blakeney v. Branker*, 314 F. App'x 572 (4th Cir. 2009) (citing *Morgan v. Illinois,* 504 U.S. 719, 728 (1992)) (markings omitted). "Voir dire of prospective jurors enables the court to select an impartial jury and assists counsel in exercising peremptory challenges." *Id*. (citing *Mu'Min v. Virginia,* 500 U.S. 415, 431 (1991)). Although trial courts sometimes authorize the use of juror questionnaires during voir dire, defendants do not have any federal constitutional right to submit questionnaires to the prospective jurors. *Id*. It is within the sound discretion of the trial court to determine how voir dire is conducted and regulate the number and nature of the questions posed. *Id*.  For those reasons, the undersigned **FINDS** that the SCAWV's determination of this claim was not contrary to or an unreasonable application of clearly established Federal law, or an unreasonable determination of the facts.

### G. Recidivist Information

Petitioner next argues that the trial court should have granted his motion to dismiss the information that the State filed regarding his prior felony convictions because it was not filed until two months after his trial ended, and the recidivist statute, W. Va. Code § 61-11-19, required that information to be filed immediately upon conviction. (ECF No. 5 at 47-48).  On appeal, the SCAWV agreed with the trial court that the purpose of the "immediacy" requirement in the statute was to require the State to inform the court of prior felonies before sentencing.  *Elswick I,* 693 S.E.2d at 52. The SCAWV found that the

standard was satisfied in Petitioner's case, and there was no error in the trial court's denial of Petitioner's motion to dismiss. *Elswick I,* 693 S.E.2d at 52-53.

Petitioner does not present any federal claim in this regard. He asserted a violation of a State statute, and the SCAWV accordingly considered and resolved the claim exclusively under State law. This Court is not in the position to review the State court's determination regarding an issue of State law. The undersigned **FINDS** that the SCAWV's determination of this claim was not contrary to or an unreasonable application of clearly established Federal law, or an unreasonable determination of the facts.

### H. Transcripts

Petitioner argues that the trial court erred in his habeas proceeding by denying his motions to conduct discovery of the trial transcript from his 1993 breaking and entering conviction, No. 93-F-16, which was one of the predicate convictions relied upon for his recidivist sentence. (ECF No. 4 at 30). On this claim, the SCAWV concluded that Petitioner was not entitled to discovery in his habeas action as a matter of course, and he failed to establish good cause for leave to conduct discovery. *Elswick III,* 2018 WL 1040357, at *2. The SCAWV noted that Petitioner did not explain how the requested transcript had any bearing on resolving his second habeas petition. *Id.* Therefore, the SCAWV affirmed the trial court's denial of Petitioner's motions for discovery for production of trial transcripts. *Id.* at *3.

There is no doubt that a "criminal defendant has a right to a meaningful appeal based on a complete transcript." *United States v. Brown*, 202 F.3d 691, 696 (4th Cir. 2000) (quoting *United States v. Huggins*, 191 F.3d 532, 536 (4th Cir. 1999)). However, there is no constitutional right to a trial transcript for collateral appeals. *United States v. MacCollom*, 426 U.S. 317, 323–24 (1976). In this case, Petitioner was even less entitled to

the transcript at issue because it was a trial transcript from an entirely different proceeding, which was actually a discovery issue in a habeas case, as opposed to any constitutional right in a direct appeal.

"The allowance of discovery was within the discretion of the State *habeas* Court upon Petitioner's showing of good cause." *Godeke v. McBride*, No. 5:05-CV-00554, 2007 WL 2874970, at *26 (S.D.W. Va. Sept. 28, 2007). Petitioner did not establish in the state habeas actions, and does not show in this matter, good cause for discovery of the transcript from his 1993 conviction. He cannot use this federal habeas action to challenge the validity of his nearly 30-year-old breaking and entering conviction. Moreover, other than stating in a conclusory fashion that the 1993 case should not have been used as a predicate for his recidivist sentence in 2008, Petitioner does not assert with any specificity why the trial transcript from his 1993 case is pertinent to his challenges to the 2008 convictions. The speculation that the trial transcript may have provided information to help him develop his habeas claims is insufficient to cast doubt on the SCAWV's decision. Simply put, the SCAWV's affirmance of the trial court's refusal to allow Petitioner to conduct discovery in his second state habeas proceeding "is not properly a subject for review in these Section 2254 proceedings," as it "does not raise a constitutional issue or any basis for federal *habeas* relief." *Id.* Therefore, the undersigned **FINDS** that the SCAWV's determination of this claim was not contrary to or an unreasonable application of clearly established Federal law, or an unreasonable determination of the facts.

## I. *Ineffective Assistance of Counsel*

Petitioner asserts that his trial and habeas counsel rendered constitutionally deficient assistance. The Sixth Amendment to the United States Constitution guarantees

a criminal defendant "the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). While "assistance which is ineffective in preserving fairness does not meet the constitutional mandate ... defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." *Mickens v. Taylor*, 535 U.S. 162, 166 (2001). To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 687-88, 694.

When assessing counsel's performance, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690. Review of trial counsel's investigation is considered from counsel's perspective at the time, as well as the professional norms then prevailing. *United States v. Higgs*, 663 F.3d 726, 739 (4th Cir. 2011). Trial strategy devised after investigating the law and facts is "virtually unchallengeable." *Bell v. Evatt*, 72 F.3d 421, 429 (4th. Cir. 1995). Courts will not second-guess an attorney's tactical decisions unless they appear unreasonable in view of all the circumstances. *Goodson v. United States*, 564 F.2d 1071, 1072 (4th. Cir. 1977). Accordingly, "[s]urmounting *Strickland's* high bar is never an easy task." *Padilla*, 559 U.S. at 371.

In the context of a § 2254 petition, an ineffective assistance of counsel claim must overcome both the *Strickland* standard and the barrier imposed by § 2254(d), resulting in review that is "doubly" deferential to the decision of the state court. *Knowles v. Mirzayance*, 556 U.S. 111, 129 (2009). The Supreme Court made clear that relief in these circumstances should be granted only sparingly. *Harrington,* 562 U.S. at 102. The

*Harrington* court clarified that the "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" which "is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Id.* at 101. This standard of review recognizes that for the "purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" *Id.* (quoting *Williams*, 529 U.S. at 410). "If this standard is difficult to meet, that is because it was meant to be." *Harrington,* 562 U.S. at 102. Habeas review under § 2254(d) is intended to function as a "guard against extreme malfunction in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102-103.

### 1.  Trial Counsel

Petitioner alleges that his trial counsel was ineffective during the recidivist trial when he failed to "bring forward numerous witnesses," "denied knowledge" of certain evidence, and submitted motions to the trial court that Petitioner requested he not submit. (ECF No. 4 at 25-26). However, Petitioner never presented any of those claims to the SCAWV, and this Court is procedurally barred from considering them. Petitioner did not assert any ineffective assistance of counsel claims in his direct appeal, which is unsurprising given that he was represented by the same attorney. (ECF No. 9-9 at 21-22); *Elswick I, 693 S.E.2d* at 291-99. Yet, in his first state habeas petition, he asserted that his trial counsel was ineffective for different reasons than the grounds asserted in his instant federal petition. He claimed that his trial counsel failed to: (1) adequately discuss the consequences of going to trial and the effect of the West Virginia habitual offender statute; (2) obtain the mandatory attendance of a co-defendant; (3) obtain exculpatory evidence; and (4) file an appeal with the Supreme Court of the United States. *Elswick II, 2014 WL*

*5328650*, at *2. Petitioner was represented by Hively in his first habeas proceeding. In his second state habeas petition, Petitioner asserted that Hively was ineffective in his first habeas proceeding by not raising ineffective assistance of trial counsel claims, but he only appealed the fact that the trial court denied him trial transcripts and leave to conduct discovery. *Elswick III,* 2018 WL 1040357, at *2. Finally, in his third state habeas petition, Petitioner again raised ineffective assistance of trial counsel claims that are different than those asserted in his federal petition. He asserted that his habeas counsel was ineffective for not raising the issue of his trial counsel's ineffectiveness by not objecting to the use of Petitioner's burglary conviction as a predicate felony in the recidivist trial and not filing a petition for a writ of certiorari in the Supreme Court. (ECF No. 48-5).

As Petitioner never presented his ineffective assistance of trial counsel claims to the SCAWV, this Court cannot consider them on the merits. *Coleman*, 501 U.S. at 750. He does not assert cause and actual prejudice for his procedural default, nor does he show actual innocence. *Id.* Furthermore, Petitioner does not show that his procedural default was attributable to ineffective habeas counsel. Although he claims that his habeas counsel was ineffective by not raising certain ineffective assistance of trial counsel claims, he does not articulate any facts to support that assertion. Petitioner litigated three state habeas proceedings, which involved multiple omnibus hearings. The undersigned notes that the SCAWV concluded upon review of that evidence, that it was "abundantly clear" that Petitioner "failed to adequately demonstrate that his trial counsel fell below the objective standard of unreasonableness" required by *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995), which adopted the *Strickland* standard. *Elswick II,* 2014 WL 5328650, at *2, *2 n.5. Moreover, the SCAWV affirmed that Petitioner's ineffective assistance of counsel claims were previously and finally adjudicated or waived, and Petitioner was not

48

permitted pursuant to the doctrine of *res judicata* to mount habeas corpus upon habeas corpus petitions. *Elswick*, 2020 WL 2910893, at *2. As the SCAWV stated, "post-conviction litigation must end at some point." *Id.* Due process does not entitle Petitioner to endless habeas proceedings.

For those reasons, the undersigned **FINDS** that the ineffective assistance of trial claims that Petitioner asserts in this action are procedurally defaulted and must be dismissed.

### 2. Habeas Counsel

Petitioner claims that his first habeas counsel, Hively, was ineffective because he failed to submit an amended *Losh* list and waived the non-asserted claims by not doing so, and because he did not assert the claim that Petitioner's trial counsel was ineffective by not objecting to the use of one of his prior felonies for recidivist purposes. (ECF Nos. 4 at 28; 40 at 27, 29). He further asserts that his second habeas counsel, Moore, was ineffective in failing to appeal to the SCAWV the issue of Hively's ineffectiveness. (ECF No. 40 at 31).

As stated above, ineffective assistance of habeas counsel regarding a claim of ineffective assistance of *trial* counsel, may provide cause for a procedural default in a federal habeas proceeding. *Martinez v. Ryan,* 566 U.S. 1, 9 (2012). However, ineffective assistance of habeas counsel does not by itself present a valid federal claim. *Id.* at 16. Section 2254 specifically provides that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). Therefore, an allegation of ineffective assistance of habeas counsel may only be employed to raise an otherwise procedurally barred claim of ineffective assistance of trial counsel. *See Green*

*v. Ballard*, No. CIV.A. 3:02-1348, 2015 WL 1612198, at *5 (S.D.W. Va. Apr. 10, 2015);
*Parker v. Dir., Virginia Dep't of Corr.*, No. 1:20CV807 (AJT/MSN), 2022 WL 1750617, at
*2 (E.D. Va. May 31, 2022). For the above reasons, the alleged ineffective assistance of
habeas counsel does not excuse Petitioner's procedural default. Moreover, as ineffective
assistance of habeas counsel is not an independent cognizable claim for federal habeas
relief, the undersigned **FINDS** that these claims must be dismissed.

### J.  *Destruction of Evidence*

Petitioner asserts that the trial court erred in denying his motions to dismiss for
destruction of evidence when the State admittedly disposed of "Rule 16 materials" without
disclosing them to the defense in violation of his due process rights. (ECF Nos. 4 at 15; 5
at 21-22, 44-45; 40 at 14). Petitioner asserted in his direct appeal that the trial court erred
by not dismissing the indictment based on the fact that the State disposed of some pieces
of white paper with phone numbers and some photographs believed to be Petitioner's
property. *Elswick I,* 693 S.E.2d at 49. The items were collected from Joey Hicks's mother's
home when police went to retrieve the knife and lighter believed to have been used in the
commission of the crime. *Id.*

On review of this claim, the SCAWV noted that the trial court held a motion hearing
and State Trooper Don Kitzmiller testified that these items had been discarded because
they lacked evidentiary value. *Id.* The trial court inquired regarding the "possible
relevance of the items seized that were thrown away or destroyed by Sergeant Kitzmiller,"
and Petitioner's counsel admitted that he did not have knowledge regarding exactly what
those photographs or pieces of paper concerned. *Id.* Ultimately, the trial court concluded
that Petitioner's defense had not been affected or prejudiced in any manner by the
destruction of the contents of that plastic bag. *Id.* The SCAWV explained that there are

50

three components to a due process violation under *Brady v. Maryland,* 373 U.S. 83 (1963), and *State v. Hatfield,* 169 W.Va. 191, 286 S.E.2d 402 (1982): (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial. *Elswick I,* 693 S.E.2d at 50.

The SCAWV noted that suppressed evidence is considered material only if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed. *Id.* Upon review, the SCAWV found no error in the trial court's refusal to dismiss the indictment on the basis of this destruction of evidence. *Id.* The SCAWV found that the degree of negligence involved was minimal to the extent that the police officer testified that the materials in question were of no value or relevance to the criminal investigation. *Id.* Further, there was no indication that the materials were important to the investigation or that the result of the proceedings would have been different had those materials been available. *Id.* The SCAWV found that the other evidence presented at trial was sufficient to support the jury's conviction of Petitioner. *Id.* For those reasons, the SCAWV rejected this assignment of error.

Petitioner does not explain how the information that the State disposed of was relevant to his case other than to state "the letters and addresses, phone numbers that were to be presented at my trial it was all destroyed, but they kept the knife and lighter." (ECF No. 40 at 14). Given that the discarded materials belonged to Petitioner, he should be able to articulate how and to what extent they were important to his defense. Nevertheless, he does not provide any clear explanation about the materials or submit information showing that, because those materials were not turned over to him, witnesses

or other evidence were not presented at his trial and materially affected the outcome. Therefore, the undersigned **FINDS** that the SCAWV's determination of this claim was not contrary to or an unreasonable application of clearly established Federal law, or an unreasonable determination of the facts.

## IV.   <u>Proposal and Recommendations</u>

The undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** the following:

1.  Petitioner's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 and Amended Petition, (ECF Nos. 4, 40), be **DENIED**;

2.  Respondent's Motion to Dismiss and for Judgment on the Pleadings, (ECF No. 48), be **GRANTED**; and

3.  This action be **DISMISSED, with prejudice.**

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Judge and a waiver of appellate review by the Circuit Court of

Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Goodwin, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner and counsel of record.

**FILED**: June 22. 2022

Cheryl A. Eifert
United States Magistrate Judge

53